UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALLY BAMBERGER,

                Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

_____/

Civil Action No.: 16-13593
Honorable Nancy G. Edmunds
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 19, 21]**

    Plaintiff Teresa Bamberger appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Bamberger's motion [ECF No. 19] be **DENIED**;
- the Commissioner's motion [ECF No. 21] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I.  BACKGROUND

A.  Background and Disability Applications

Bamberger was born on July 25, 1977, making her 34 years old on her alleged onset date of June 2, 2012. [ECF No. 15-6, Tr. 151]. She has completed four or more years of college and has prior work history as a cashier and teacher. [ECF No. 15-6, Tr. 156-57]. She alleged disability due to fibromyalgia, myofascial pain, chronic fatigue syndrome, sleep deprivation, gastric bypass surgery residuals, short term memory issues, depression, anxiety, interstitial cystitis, chronic bladder pain, inability to concentrate, central sensitivity syndrome, irritable bowel syndrome, constipation, and vision problems. [ECF No. 11-6, Tr. 164].

After the Commissioner denied her disability application initially, Bamberger requested a hearing, which took place in June 2016, during which she and a vocational expert (VE) testified. [ECF No. 15-2, Tr. 26-57]. In a September 21, 2015, written decision, the ALJ found Bamberger to be not disabled. [*Id.*, Tr. 19]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Bamberger timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

## B.     The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Bamberger was not disabled. At the first step, he found that Bamberger had engaged in substantial gainful activity since her alleged onset date, but he nevertheless continued in the five step analysis. [ECF No. 15-2, Tr. 13]. At the second step, the ALJ found that Bamberger had the severe impairments of "fibromyalgia/myofascial pain, clinically isolated syndrome, chronic cholecystitis, myelopathic quadriparesis, insomnia, obesity, and seasonal affect disorder." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 14-15].

Between the third and fourth steps, the ALJ found that Bamberger had the RFC to perform light work as defined in 20 C.F.R. 416.967(b), with additional limitations:

> [T]he claimant can occasionally balance, stoop, crouch, and climb ramps and stairs but never kneel, crawl, or climb ladders,

4

> ropes, or scaffolds. She can frequently reach, handle, and finger with the bilateral hands. She must avoid unprotected heights and operation of moving machinery. She can carry out simple instructions. She cannot work at a production rate pace (i.e., assembly line). She would miss one day of work per month.

[*Id.*, Tr. 15]. At the fourth step, the ALJ concluded that Bamberger could not perform her past relevant work. [*Id.,* Tr. 18]. At the final step, after considering Bamberger's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Bamberger could perform work in occupations such officer helper, housekeeping cleaner, and cashier, which exist in significant numbers in the national economy. [*Id.*, Tr. 18-19].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

5

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Bamberger, acting *pro se*, filed a purported motion for summary judgment that consisted of "claimant's responses" and failed to cite to the medical record in support of its claims. Generally, this Court has no obligation to scour the record on behalf of a Social Security claimant, *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011), and a lack of analysis of the medical records can viewed as a waiver of claims, *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

Pursuant to a prior order, the Court has reviewed only the portions of the record cited by the ALJ to determine whether the ALJ provided substantial evidence in support of: (1) the determination that Bamberger engaged in substantial gainful employment after the alleged onset day; (2) the assessed residual function capacity; (3) the determination that Bamberger's claims were not fully credible; and (4) that Bamberger's treating physicians' opinions were not entitled to controlling weight. [ECF No. 20]. After reviewing the decision of the ALJ, the Commissioner's brief, and the portions of the record they cited, the Court finds that the ALJ's decision was supported by substantial evidence.

6

**B.**

At step one, the ALJ stated that Bamberger had worked after her alleged onset date, and that the work rose to the level of substantial gainful activity. [ECF No. 15-2, Tr. 13]. Bamberger's certified earnings records show that she earned $31,363.13 over four quarters in 2012 and $40,083.33 over four quarters in 2013—earnings well above the amount necessary to qualify for substantial gainful activity under 20 C.F.R. § 404.1574(a) and (b). [ECF No. 15-5, Tr. 142, 143, 147]. *See also* Program Operations Manual System ("POMS") § DI 10501.015(B).[2] These earnings create a rebuttable presumption that Plaintiff engaged in substantial gainful activity, and one that Bamberger has failed to rebut. *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996).

Thus, the ALJ's analysis could have ended at step one. 20 C.F.R. § 404.1520(a)(4)(i). And even if the ALJ did err at step one, that error would be harmless since the ALJ continued the sequential analysis. *See, e.g., Quisenberry v. Comm'r of Soc. Sec.*, No. 12-CV13650, 2013 WL 4507931, at *6 (E.D. Mich. Aug. 23, 2013).

---

[2] *Available at* https://secure.ssa.gov/poms.nsf/lnx/0410501015 (last accessed January 30, 2018).

## C.

The regulations define the RFC as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). When crafting an RFC, an ALJ is only required to include those limitations he finds credible. *See Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Here, the ALJ cited to extensive portions of the record to support his conclusions. [ECF No. 15-2, Tr. 16, citing ECF No. 15-7, Tr. 306, 310, 334-36, 338, 340-41, 381, 406-08, 410, 413-15, 417, 426, 455-56, 468, 469, 486, 490-91, 503, 505; ECF No. 15-8, Tr. 558]. These records show that, when Steven Beall, M.D., prescribed Betaseron in August 2013 for Bamberger's fibromyalgia symptoms—including fatigue, lack of sleep and pain—the medication was largely effective. [ECF No. 15-7, Tr. 428-29]. After a week of taking Betaseron at a quarter dosage, Bamberger had a "dramatic reversal of the partial paralysis of the arms and legs," and she noticed that "she has now been able to walk as far as she wants to walk," though she still complained of constipation. [*Id.*, Tr. 426-27]. In March 2014, Bamberger had fatigue symptoms at a three out of five severity, but no weakness; and Dr. Beall noted that since starting the medication her "exam has been perfect." [*Id.*, Tr. 469]. He increased her dosage to three-

8

quarters at that time. [*Id.*]. A month later, Bamberger's Betaseron prescription was increased to a full dosage, but she was also prescribed Avonex, which she said made her fatigue symptoms "much better" and only a two out of ten in severity. [*Id.*, Tr. 468]. She had normal strength, coordination, and senses in all extremities. [*Id.*].

The ALJ also cited to records showing Bamberger as having normal gait and station, normal strength, intact reflexes in extremities, and normal sensory responses and coordination. [ECF No. 15-2, Tr. 16, citing ECF No. 15-7, Tr. 335, 338, 341, 343, 407, 410, 414, 417, 426, 428, 433-34, 447-49, 468-70, 502, 505, 508, 511, 531; ECF No. 15-8, Tr. 556-57, 559, 567- 68]. And Bamberger testified to sitting through her children's practices, fixing meals with them, and doing some driving. [ECF No. 15-2, Tr. 33, 39-40]. She also acknowledged in her function report that she cleans, does laundry in short increments with breaks, and goes grocery shopping once per week. [ECF No. 15-6, Tr. 207-09].

The Commissioner further notes that the RFC assessment is supported by the opinions of George Pestrue, Ph.D., a consultative examiner, and the state agency consultants Edward Brophy, D.O., and Ron Marshall, Ph.D. [*See* ECF No. 15-2, Tr. 17]. Dr. Pestrue found Bamberger to have adequate contact with reality, a fair self-esteem, spontaneous

mental activity with generally reasonable answers to questions, and that she had no memory or cognitive defects during the evaluation. [ECF No. 15-7, Tr. 440-43]. He concluded that her medical problems appear to be her primary disability, though he also noted that her gait appeared to be unimpaired. [*Id.*, Tr. 440, 443]. His sole mental diagnosis was of seasonal affective disorder, and he assessed a global assessment of functioning (GAF) score of 60, suggesting moderate limitations.[3] [*Id.*, Tr. 443].

    Dr. Marshall opined that Bamberger had only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in concentration, persistence, or pace, with no episodes of decompensation of an extended duration. [ECF No. 15-3, Tr. 69]. He found her statements regarding mental symptoms to be only partially credible, as her claimed cognitive and memory issues were not fully supported by Dr. Pestrue's findings. [*Id.*, Tr. 70]. Dr. Brophy analyzed the medical record and opined that Bamberger could occasionally lift 20 pounds, frequently lift ten pounds, could stand and/or walk as well as sit for

---

[3] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 F.App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

six out of eight hours of a work day, and had otherwise unlimited push and/or pull capability. [*Id.*, Tr. 70-71]. He found her to be limited to only occasionally climbing, balancing, and other postural activities, and to have no manipulative, visual, communicative, or environmental limitations. [*Id.*].

The ALJ gave the opinions of Dr. Marshall and Dr. Brophy some weight, as his RFC was more restrictive than what their opinions would require. He ruled out kneeling, crawling, or climbing for Bamberger, as well as operating at unprotected heights or with moving machinery; limited her to carrying out simple instructions; ruled out production rate pace work; and found that she would miss one day of work per month. [ECF No. 15-2, Tr. 15, 17-18].

All of this evidence constitutes substantial evidence supporting the ALJ's assessment of Bamberger's RFC.

### D.

The ALJ found that Bamberger's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. [ECF No. 15-2, Tr. 16]. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same

time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

The ALJ found that her complaints of aches, pains, fatigue, and sleep disturbance were not entirely consistent with her significantly improving condition as evidenced by the record. [*Id.*, Tr. 16, citing ECF No. 15-7, Tr. 306, 310, 334-36, 338, 340-41, 381, 406-08, 410, 413-15, 417, 426, 455-56, 468, 469, 486, 490-91, 503, 505; ECF No. 15-8, Tr. 558]. Bamberger reported using a cane, but this claim was also unsupported, as her strength, coordination, and gait and station were consistently reported to be normal or within normal limits. [ECF No. 15-7, Tr. 335, 338, 341, 343, 407, 410, 414, 417, 426, 428, 433-34, 447-49, 468-70, 502, 505, 508, 511, 531; ECF No. 15-8, Tr. 556-57, 559, 567- 68].

The ALJ's credibility determination is also supported by Dr. Marshall and Dr. Brophy, who opined that Bamberger's statements regarding her physical and mental symptoms were only partially credible. [ECF No. 15-3, Tr. 70]. The Court finds no reason to disturb the ALJ's credibility findings.

**E.**

The ALJ gave little weight to the medical opinions of Ravi Lakkaraju, M.D., and Gavin Awerbach, M.D., reasoning that they were not supported by the record. [ECF No. 15-2, Tr. 17]. The "treating physician rule"

12

requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).

Dr. Lakkaraju's August 2012 opinion indicated that Bamberger had "significant problems with memory recall and attention span," "severe lability in her endurance and function," and "generalized pain." [ECF No. 15-7, Tr. 499]. He opined that she could not sit for more than two hours, stand for more than one hour, or walk for more than a half-hour in an eight-hour work day, and could not lift more than five pounds. [*Id.*]. The ALJ found Dr. Lakkaraju's opinion to be unsupported by the objective evidence due to "rather benign" findings, and due to her significant improvement from medication. [ECF No. 15-2, Tr. 17]. This finding is supported by substantial evidence.

Dr. Lakkaraju's notes preceding his opinion show spinal and head/neck tenderness and complaints of fatigue, but they also reflect a normal gait without assistive devices, full strength in upper and lower extremities, normal spinal alignment and palpation, and normal testable neurological reflexes. [*Id.*, Tr. 334-35, 338, 340-41, 343, 345]. These findings are also reflected in many of his subsequent records. [*Id.*, Tr. 410, 414, 417]. Furthermore, he rendered his opinion before Bamberger began taking Betaseron in August 2013, which resulted in the improvements in her symptoms cited above. The ALJ had good reasons for giving Dr. Lakkaraju's opinion little weight.

14

The same analysis applies to the opinion of Dr. Awerbach, except that his opinion was made after only a single examination, meaning that he was not a treating physician. "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). "[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006). Thus, although the ALJ referred to Dr. Awerbach as a treating physician, [ECF No. 15-2, Tr. 17], he was not required to give that opinion controlling weight.

Nor did the ALJ err in giving Dr. Awebach's opinion little weight. Dr. Awerbach opined in March 2013 that Bamberger could only occasionally lift up to five pound; could only stand, walk, and sit one-to-two hours per work day each; did not need an assistive device for ambulation but could not operate foot/leg controls; could not perform grasping, reaching, pushing, pulling, or fine manipulation; and needed assistance with house work. [*Id.*, Tr. 380]. Giving this one page opinion little weight, the ALJ noted that it failed to provide specific findings to support its conclusions, that

Bamberger's daily activities were inconsistent with the limitations to which Dr. Awerbach opined, and that Dr. Awerbach's opinion was contradicted by Bamberger's good response to her medication. [ECF No. 15-2, Tr. 17]. For the same reasons that the ALJ's RFC and credibility determinations were supported by substantial evidence, the Court finds that the ALJ did not err in giving Dr. Awerbach's opinion little weight.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Bamberger's motion for summary judgment be [ECF No. 19] be **DENIED**; that the Commissioner's motion [ECF No. 21] be **GRANTED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: February 6, 2018   United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 6, 2018.

                                          s/Marlena Williams
                                          MARLENA WILLIAMS
                                          Case Manager